

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

WK:SP/VC  
F. #2023R00389

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 5, 2024

<u>By ECF</u>

Honorable Nina R. Morrison  
United States District Judge  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

      Re:   United States v. Chowdhury et al.  
             <u>Criminal Docket No. 23-378 (NRM)</u>

Dear Judge Morrison:

      Earlier today, defense counsel submitted a joint letter on behalf of all parties concerning the state of discovery. The government now writes separately in response to the Court's request that the government address the status of inquiries made to District Attorneys' offices regarding New York City Police Department officers ("NYPD").

      Specifically, during the last status conference, the Court asked the government whether the NYPD "was involved in at least some portion of the investigation into the underlying incidents," and the government advised that the case was investigated both by the Federal Bureau of Investigation ("FBI") and the NYPD. (Status Conference Tr. at 17 (Nov. 28, 2023).) The Court then advised that "in all of the cases assigned to me in which the NYPD participates jointly or independently with the investigation, I ask as a matter of course for the Government counsel to check with the District Attorney's office in the borough or boroughs to which the officers are currently assigned or have ever been assigned specifically regarding whether there is any Brady or Giglio to be disclosed to you and upon your review then to the defense." (<u>Id.</u>). The Court further asked the government to "address the status of those inquiries" in this filing. (<u>Id.</u> at 18).

      The U.S. Supreme Court decision <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), requires the government to provide the defense with any evidence within the possession, custody, or control of the prosecution team that is favorable to the accused and material to guilt or punishment. With respect to <u>Brady</u> materials, we have been searching, and will continue to search, for <u>Brady</u> evidence on an ongoing basis; we have not yet identified any.

Under Giglio v. United States, 405 U.S. 150 (1972), and United States v. Bagley, 473 U.S. 667, 676 (1985), the government has a related but distinct obligation to provide defendants with evidence affecting government witnesses' credibility, including certain impeachment information. This Office has in place a process to ensure a thorough and standardized Giglio review for all law enforcement officers, including members of the NYPD. The Office maintains an NYPD Giglio coordinator—an Assistant United States Attorney who acts as a liaison between the Office and the NYPD. In advance of any hearing or trial, the assigned prosecutor undertakes the Giglio review process, which includes working with the NYPD Giglio coordinator to obtain potential impeachment information relevant to the witness-officer directly from the NYPD, as well as interviewing each witness-officer to identify other potential impeachment information. The assigned prosecutor then makes all appropriate disclosures in time for their effective use at the hearing or trial.

This case was charged by indictment on July 7, 2023. At this early phase, no hearing or trial has yet been scheduled. Accordingly, there can be no Giglio materials because the government does not yet know its witness list for any potential hearing or trial. Moreover, production to the defendant of any such material would be premature at this time. In the Second Circuit, Giglio materials must be produced "in time for [their] effective use at trial." United States v. Coppa, 267 F.3d 132, 135 (2d Cir. 2001); see also United States v. Rodriguez, 496 F.3d 221, 228 n.6 (2d Cir. 2007). There is no requirement, however, that such materials be produced in advance of trial. See, e.g., United States v. Yu, No. 97-CR-102 (SJ), 1998 WL 57079, at *5 (E.D.N.Y. Feb. 5, 1998) ("Brady material of an impeachment nature, commonly referred to as Giglio material, is not required to be produced before trial.") (citing United States v. Nixon, 418 U.S. 683, 701 (1974)); Nixon, 418 U.S. at 701 ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."); United States v. Hotte, No. 97-CR-669 (SJ), 1997 WL 694718, at *2 (E.D.N.Y. Nov. 6, 1997) ("Evidence which is not exculpatory, but is relevant for the purposes of impeachment, must be produced to the defense, but need not be turned over in advance of trial. The Government may wait until a witness has testified before disclosure of such material is mandated." (citation omitted)). As it customarily does, the government will provide the defense with Giglio materials, if they exist, for all witnesses, including NYPD officers, reasonably in advance of a hearing or trial. See United States v. Barrera, 950 F. Supp. 2d 461, 476 (E.D.N.Y. 2013) ("[I]t is the Government's responsibility to determine . . . when such evidence should be disclosed in time for its effective use." (quoting United States v. Gustus, No. 02-CR-888, 2002 WL 31260019, at *2 (S.D.N.Y. Oct. 8, 2002)) (first alteration in original)).

Moreover, with respect to both Brady and Giglio, the government is not required to consult with a local District Attorney's Office unless that office is part of the prosecution team.[1] United States v. Canniff, 521 F.2d 565, 573 (2d Cir. 1975) (the government "cannot be

---

[1] Whether a person or agency is part of the prosecution team depends on the level of interaction between the prosecutor and the agency or individual. See United States v. Locascio, 6 F.3d 924, 949 (2d Cir. 1993) (reports made by FBI agents in the course of investigations unrelated to the defendants' prosecutions should not be imputed to prosecution team); Pina v. Henderson, 752 F.2d 47, 49 (2d Cir. 1985) (prosecutor's constructive knowledge did not extend to a parole officer who "did not work in conjunction with either the police or the prosecutor" but did extend to a police officer who was the investigating officer on the case); United States v.

required to produce that which it does not control and never possessed or inspected"); see also United States v. Hutcher, 622 F.2d 1083, 1088 (2d Cir. 1980) ("We reject . . . a notion of 'possession' which is so elastic as to embrace materials that the prosecution never had in its files, never inspected, and never knew about."). Indeed, a prosecutor is not even deemed to control or possess documents of "every agency and individual within the federal government." United States v. Meregildo, 920 F. Supp. 2d 434, 440 (S.D.N.Y. 2013), aff'd sub nom. United States v. Pierce, 785 F.3d 832 (2d Cir. 2015). See also United States v. Quinn, 445 F.2d 940, 944 (2d Cir. 1971) (rejecting argument "that 'knowledge of any part of the government is equivalent to knowledge on the part of this prosecutor'" as "completely untenable"); United States v. Chalmers, 410 F. Supp. 2d 278, 287-90 (S.D.N.Y. 2006) (holding "prosecution team" did not include other government agencies conducting their own investigations into the United Nations Oil-for-Food Program, including the Departments of State, Treasury, and Defense, the Central Intelligence Agency, the National Security Agency and the U.S. Congress). As the Second Circuit has explained, a contrary rule would be unworkable:

> [T]he imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require [courts] to adopt a monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis.

United States v. Avellino, 136 F.3d 249, 255 (2d Cir. 1998) (internal quotation marks omitted); id. at 256 (refusing to impute information gathered in state investigation to federal prosecutor); United States v. Diaz, 176 F.3d 52, 107-08 (2d Cir. 1999) (refusing to impute purported witness impeachment information known by local police officer to the prosecution even though the officer had previously assisted the Task Force in monitoring wiretaps and in conducting surveillance because he did not assist in the witness's cooperation and was not involved in the

---

Morell, 524 F.2d 550, 555 (2d Cir. 1975); United States v. Bin Laden, 397 F. Supp. 2d 465, 481 (S.D.N.Y. 2005), aff'd sub nom. In re Terrorist Bombings of U.S. Embassies in E. Africa, 552 F.3d 93 (2d Cir. 2008). As a result, the question of whether a District Attorney's office can be considered part of the prosecution team in a federal case is a fact-specific inquiry that must be conducted on a case-by-case basis.

investigation and prosecution at issue). Consistent with that principle, the government's practice is to obtain NYPD officers' <u>Giglio</u> materials, if any, directly from the NYPD.

         Respectfully submitted,

         BREON PEACE
         United States Attorney

    By:  /s/ Stephanie Pak
       Stephanie Pak
       Vincent Chiappini
       Assistant U.S. Attorneys
       (718) 254-6064/6299

c.c.:  All Defense Counsel

4