UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
UNITED STATES OF AMERICA

                                                       MEMORANDUM AND ORDER
                                                       23-CR-278 (NRM)

                    -against-

IFFAT LUBNA,

                 Defendant.

------------------------------------------------------------------x

NINA R. MORRISON, United States District Judge:

    Iffat Lubna stands charged with two counts of Kidnapping Conspiracy, in violation of 18 U.S.C. § 1201(c), and two counts of Kidnapping, in violation of 18 U.S.C. § 1201(a)(1). Pending before the Court is Lubna's motion to suppress statements made after her alleged invocation of her right to remain silent. For the reasons to follow, Lubna's motion is GRANTED.

## **RELEVANT BACKGROUND**

### I. Facts

    The following facts are drawn from the parties' motion papers, insofar as they are uncontested, and the exhibits attached to said motions.

    On July 10, 2023, Iffat Lubna was arrested pursuant to a warrant in connection with one of the alleged kidnappings. *See* Government Opposition ("Gov't Opp."), ECF No. 303 at 19; Lubna Memorandum of Law in Support of Motion to

1

Suppress ("Lubna Mem."), ECF No. 285 at 6.[1] Upon her arrest, she was transported to an FBI office in Manhattan. Gov't Opp. at 19. At the time of her arrest, Lubna was twenty-three years old and approximately nine weeks pregnant. Lubna Mem. at 6. Within approximately an hour and five minutes of arriving at the FBI office, she was brought to an interview room with recording equipment. Gov't Opp. at 19. Three law enforcement agents, an FBI Task Force Officer ("TFO"), an FBI special agent, and an NYPD officer who spoke both English and Bengali ("translating officer"), entered the room to begin the interview. *Id.* The interview was recorded. *Id.* Lubna spoke Bengali and limited English, and as such the interview was conducted with the assistance of the translating officer. Lubna Mem. at 6.

The translating officer proceeded to read Lubna her *Miranda* rights in Bengali, and Lubna waived her rights and agreed to speak with law enforcement. Gov't Opp. at 19. Overall, the interview lasted about two hours. *Id.* However, approximately one hour into the interview, the following exchange took place — all in Bengali, with the aid of a Bengali-speaking police officer who also served as an interpreter:[2]

> **Translating Officer**: Now, we need to know some things: what actually happened? Many times, there are pictures or videos . . .

---

[1] Pincites refer to the pagination generated by CM/ECF, not the document's internal pagination.

[2] The government and Lubna have both provided their own respective transcripts of the interview, which contain slightly different translations of the portions of the interview conducted in Bengali. *See* Gov't Tr., Gov't Opp. Ex. 1, ECF No. 303-1; Lubna Tr., Ex. A to Biale Decl., ECF No. 285-2. The Court need not resolve these discrepancies, because it finds, even if relying on the government's translation, that Lubna's post-invocation statements should be suppressed. Thus, the Court will rely on the government's translation for this Order.

> **Lubna**: Hmm.
> **Translating Officer**: But we don't have everything. Since you were there, whatever you know.
> **Lubna**: I told you, brother, whatever I know.
> **Translating Officer**: Alright, but don't lie.
> **Lubna**: [unintelligible]
> **Translating Officer**: Don't lie because you said that you left with your husband, but you didn't. Don't tell such lies because for every lie, you will have a separate punishment. Don't try to say what you've already said.
> **Lubna**: *I don't want to say anything else.*
> **Translating Officer**: That's your choice, but you should say what you know, or not, I don't know.
> **Lubna**: I'm saying what I know because suddenly he's like, he's threatening me . . .

Gov't Tr. at 24–25 (emphasis supplied). After this interaction, the interrogation continued for approximately one more hour. *See* Gov't Opp. at 20; Lubna Mem. at 7.

## II. Procedural History

On May 30, 2025, Lubna filed the instant motion to suppress. *See generally*, Lubna Mem.[3] Lubna does not seek to suppress all the statements she made during her interrogation. Instead, she contends that all the statements she made to law enforcement after saying "I don't want to say anything else" should be suppressed. Lubna Mem. at 9–11. Oral argument on Lubna's motion was held before this Court on August 26, 2025. *See* Minute Entry dated August 26, 2025; Transcript of August 26 Oral Argument ("Oral Arg."). This order follows.

---

[3] She also filed a motion for a bill of particulars, which has since been resolved. *See* Minute Entry dated August 26, 2025.

3

## **DISCUSSION**

Lubna's argument is simple: when Lubna told her interrogators that she did not "want to say anything else," she clearly invoked her right to remain silent, and law enforcement was obligated to end the interrogation. Lubna Mem. at 11–15.[4] This Court agrees.

When a person is subjected to a custodial interrogation, law enforcement is required to inform that person that "[s]he has the right to remain silent, that anything [s]he says can be used against [her] in a court of law, that [s]he has the right to the presence of an attorney, and that if [s]he cannot afford an attorney one will be appointed for [her] prior to any questioning if [s]he so desires." *Miranda v. Arizona*, 384 U.S. 436, 478–79 (1966). Once informed of her rights, "the suspect is free to exercise [her] own volition in deciding whether or not to make a statement to the authorities." *Oregon v. Elstad*, 470 U.S. 298, 308 (1985).[5]

However, "[i]f the individual indicates in any manner, at any time prior to *or during* questioning, that [s]he wishes to remain silent, the interrogation must cease." *Miranda*, 384 U.S. at 473–74 (emphases supplied). This indication or "invoking" of

---

[4] Lubna does not argue that any of her statements made after she was administered her *Miranda* rights but before she allegedly invoked her right to remain silent should be suppressed.

[5] Lubna does not argue that her *Miranda* rights were improperly administered, or that she did not initially voluntarily waive them. Thus, it is uncontested that she *initially* "knowingly and voluntarily waived [her] *Miranda* rights when making [her] statement[s]" prior to the alleged invocation. *United States v. Plugh*, 648 F.3d 118, 127 (2d Cir. 2011) (alterations adopted) (quoting *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010)).

4

her right to remain silent must be made "unambiguously." *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010).  While the invocation must be unambiguous, it still "must be construed liberally," *Bradley v. Meachum*, 918 F.2d 338, 342 (2d Cir. 1990) (citing *Hoffman v. United States*, 341 U.S. 479, 486 (1951)), and there are no "talismanic phrases or any special combination of words" one must use to cut off questioning. *United States v. Ramirez*, 79 F.3d 298, 304 (2d Cir. 1996) (citing *Quinn v. United States*, 349 U.S. 155, 162–63 (1955)).  In determining whether an individual's invocation was unambiguous, "[a] court should examine the entire context in which the claimant spoke." *Bradly*, 918 F.2d at 342 (internal quotation marks omitted).

Once an individual unambiguously invokes her right to remain silent, that request must be "scrupulously honored," and law enforcement must "cut off questioning." *Michigan v. Mosley*, 423 U.S. 96, 104 (1975) (internal quotation marks omitted).  This is not to say that the police may never question the individual again, but it must be clear that the subsequent answers to questions were again voluntary — for example, when officers "immediately cease[] the interrogation, resume[] questioning only after the passage of a significant period of time and the provision of a fresh set of warnings, and restrict[] the second interrogation to a crime that had not been a subject of the earlier interrogation." *Id*. at 106.

The Second Circuit has made clear that a law enforcement officer immediately responding to an individual's invocation with an attempt to convince that individual to change her mind is improper. *See United States v. Montana*, 958 F.2d 516, 518–19 (2d Cir. 1992) (finding that after a suspect's invocation, law enforcement's

5

"unsolicited statement" that "any cooperation would be brought to the attention of the Assistant United States Attorney" constituted interrogation and "violated [defendant's] right to cut off questioning"). It is true that "narrow questions are permitted for the strictly limited purpose of clarifying an ambiguous response," but those questions must not be aimed at "changing [her] mind." *Campaneria v. Reid*, 891 F.2d 1014, 1021 (2d Cir. 1989). Thus, "an accused's *post-request* responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself." *Smith v. Illinois*, 469 U.S. 91, 100 (1984).

In its initial opposition papers, the government argued that Lubna's statement "I don't want to say anything else" was an "equivocal statement that did not require law enforcement to cease their questioning." *See* Gov't Opp. at 25. Yet it is hard to imagine a more unequivocal assertion of a wish to decline to answer further questions than "I don't want to say anything else." Other courts have held as much when presented with similar statements. *See, e.g.*, *Campeneria*, 891 F.2d at 1017, 1021 (finding the statement "I don't want to talk to you now, maybe come back later" neither "ambiguous [n]or equivocal"); *United States v. Griffin-Bey*, No. 22-cr-172 (ARR), 2022 WL 7060534, at *5 (E.D.N.Y. Oct. 12, 2022) (explaining that the statement "'I don't have anything to say' . . . explicitly informed the detectives that [the defendant] did not wish to speak").

At oral argument, the government conceded that Lubna's statement, standing alone, *was* unambiguous in its invocation of her right to remain silent. *See* Oral Arg. at 7 ("**The Court**: [T]he statement standing alone, you agree, is the type of

unambiguous statement that the Second Circuit has held, and the Supreme Court has held, is sufficient to put the officials on notice that she's invoked? **The government**: That is fair to say . . . ."). However, the government now argues that because she "fluidly continued her conversation with the law enforcement agents" after her request, Gov't Opp. at 25, her statement "in the context of [the] entire interview" was ambiguous. Oral Arg. at 13. It was not.

The fact that the interview continued for an hour after Lubna made her invocation clear cannot render her statement ambiguous. The entire purpose of the prophylactic rule requiring law enforcement to "scrupulously honor" an individual's invocation is to be sure that any subsequent statements are not a result of "the coercive pressures of the custodial setting." *Mosley*, 423 U.S. at 103–04. However, where the *suspect* is the person who, unprompted by police, initiates further conversation, it is not improper for law enforcement to continue the interrogation. *See United States v. Gonzalez*, 764 F.3d 159, 166 (2d Cir. 2014) (finding no Fifth Amendment violation where the defendant independently reinitiated the questioning after invoking his right to remain silent); *cf. United States v. Ross*, 21-cr-571 (BMC) (LB), 2023 WL 6160436, at *10 (E.D.N.Y. July 31, 2023), *report and recommendation adopted*, 2023 WL 6158840 (Sep. 21, 2023) (holding that a defendant's unprompted statements after his invocation "turned what may have been an unequivocal statement into an ambiguous one").

In this case, immediately after Lubna unequivocally invoked her right to remain silent, she did not keep speaking. Rather, the translating officer interjected

7

by saying, "[t]hat's your choice, *but you should say what you know*, or not, I don't know." Gov't Tr. at 25 (emphasis supplied). The Court does not find that this was a narrow request for the "limited purpose of clarifying an ambiguous response." *Campaneria*, 891 F.2d at 1021. To immediately follow an invocation of rights by telling the suspect that she "should say what [she] know[s]" is clearly a statement aimed at "changing [her] mind." *Id.* Thus, the fact that the conversation continued for "[a]pproximately an hour" in a manner that was "relatively fluid" where Lubna was "given an opportunity to give statements that [were] beneficial to herself," Oral Arg. at 7–8, is of no consequence, as "statements made in response to questions after a suspect has invoked [her] right to remain silent cannot be used to raise doubts about [her] initial invocation." *Campeneria*, 891 F.2d at 1022.

The government contends that this case is analogous to *Wilson v. Henderson*, 584 F.2d 1185 (2d Cir. 1978), because, according to the government, at various points in the interrogation Lubna complained about "actually [being] the victim," and the translating officer merely gave Lubna "an open invitation to tell her piece" after she invoked. Oral Arg. at 9–11. But *Wilson* is clearly distinguishable. In *Wilson*, after the defendant was given his *Miranda* warnings, he was asked whether he "wished to make a statement," and answered "no." The investigator then asked a follow up question: "Well, would you care to tell me what you did on July 4th?" — to which Wilson responded "yes," and proceeded to give an account of his whereabouts on that date. The *Wilson* Court found that the investigator had asked a proper clarifying question after the defendant declined to "make a statement." 584 F.2d at 1186–89.

8

That is a markedly different exchange than in Lubna's case. As the Second Circuit has since underscored, *Wilson* can be read to permit officers to ask additional questions only when a suspect's invocation is "not clear but ambiguous," and does *not* extend to cases in which there is "no latent ambiguity" in the invocation. *Anderson v. Smith*, 751 F.2d 96, 98, 103–05 (2d Cir. 1984) (finding that, after suspect was asked "Do you want to talk to me now" and answered "No," police lieutenant violated Fifth Amendment when he asked, "You don't want to talk to me? Why?" and continued to question the suspect).

Here, as the government has now conceded, Lubna's "I don't want to say anything else" statement was not ambiguous. There was nothing for her interrogators to clarify about her decision to remain silent, and they were obligated to "scrupulously honor" this request. *Mosley*, 423 U.S. at 103–04. Instead, they continued the interrogation. Thus, all Lubna's statements after she informed the officers that she did not "want to say anything else" must be suppressed.

## CONCLUSION

For the foregoing reasons, Lubna's motion to suppress certain custodial statements is GRANTED.

                                                        */s/ Nina R. Morrison*
                                                    NINA R. MORRISON
                                                    United States District Judge

Dated: October 22, 2025
       Brooklyn, New York